IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 15, 2013 Session

# WAL-MART STORES EAST, L.P. v. NORTH EDGEFIELD ORGANIZED NEIGHBORS, INC.

**Appeal from the Chancery Court for Davidson County**
**No. 12445IV     Russell T. Perkins, Judge**

---

**No. M2013-01351-COA-R3-CV-Filed December 17, 2013**

---

This appeal arises from a Complaint to Quiet Title and for Declaratory Relief filed by Wal-Mart Stores East, L.P. Pursuant to a 2008 Quitclaim Deed, Wal-Mart conveyed, subject to a reversion clause, a one-quarter acre parcel to the defendant upon which stood a 1930's era Fire Hall. The reversion clause states, in pertinent part, that fee-simple ownership of the property shall revert to Wal-Mart in the event the improvements are subject to any casualty. "Casualty" is defined in the deed to include a fire that results in damage to all or substantially all of the Fire Hall or damage that is not repaired within 180 days after the occurrence of such casualty. It is undisputed that substantially all of the Fire Hall was damaged following a fire that occurred on December 1, 2011. This action ensued, and Wal-Mart subsequently filed a motion for summary judgement contending fee-simple title reverted to Wal-Mart due to the December 2011 casualty. The defendant did not dispute the fact that substantially all of the Fire Hall was damaged by the fire; nevertheless, the defendant opposed the motion on the basis that the term "casualty," as defined in the deed, is ambiguous. The trial court concluded as a matter of law that the term "casualty" was clear and unambiguous, that the damage resulting from the December 2011 fire constituted a casualty, and that the property reverted back to Wal-Mart. Therefore, the court granted summary judgment in favor of the petitioner. The defendant appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and ANDY D. BENNETT, J., joined.

Joseph Howell Johnston, Nashville, Tennessee, for the appellant, North Edgefield Organized Neighbors, Inc.

J. Graham Matherne, Nashville, Tennessee, for the appellee, Wal-Mart Stores East, L.P.

**OPINION**

In 2004, Wal-Mart Stores East, L.P. ("Wal-Mart"), purchased several acres located on and near Gallatin Pike in Nashville, Tennessee, for the purpose of constructing and operating one of its stores. Within this larger tract is a one-quarter acre parcel upon which stood an abandoned 1930's era fire station, known as Fire Hall No. 18 (hereinafter "the Fire Hall"), which is the property at issue in this case.

In 2008, following discussions with various community leaders, Wal-Mart prepared and executed a Quitclaim Deed that conveyed the Fire Hall to a community non-profit corporation, North Edgefield Organized Neighbors, Inc. ("NEON"), subject to numerous conditions and restrictions. These restrictions included NEON's acknowledgment that the Fire Hall did not fully comply with Metro Department of Building Codes, and that NEON agreed to repair all existing code violations, maintain insurance on the building, and open and operate a cultural arts center for the community. The Quitclaim Deed also contained the following reversion clause:

> [I]n the event that the PROPERTY and/or the improvements thereon are subject to any CASUALTY or CONDEMNATION, then the PROPERTY or as much of the PROPERTY as was not taken under the power of eminent domain shall revert to the GRANTOR, and this deed shall become forfeited and the PROPERTY and all the rights herein conveyed shall at once revert to and revest in and become the property of GRANTOR, its successors or assigns without any declaration of forfeiture or act of re-entry, and without any other act by GRANTOR to be performed. For purposes of the foregoing sentence, "CASUALTY" shall mean a fire or other casualty that results in damage to all or substantially all of the Firehall (as hereinafter defined) or damage that is not repaired within 180 days after the occurrence of such casualty[.]

The deed was signed by an officer of Wal-Mart on November 17, 2008, and delivered to NEON. One year later, on November 17, 2009, the president of NEON signed the Quitclaim Deed on behalf of NEON as the grantee. The deed was duly recorded on December 9, 2009.

Over the next two years, the covenants in the deed notwithstanding, NEON failed to remedy the code violations, failed to maintain insurance, and failed to open and operate the facility as a community center. Then, on December 1, 2011, a fire caused substantial damage to the roof and rear portion, as well as smoke and water damage throughout the remainder

of the structure.[1] The following day, December 2, 2011, the Metro Codes Department conducted an inspection and declared the building "unsafe for human habitation." The Property Standards Inspection Report ("Report") stated that more than 75% of the exterior and interior of the building had been damaged and that the plumbing, heating, and electrical facilities had become non-functional from the fire damage. The Report further stated:

> The severity of the condition of this property is such that the repairs necessary to bring this property into compliance with applicable codes would exceed fifty percent of the structure's value qualifying this property for demolition. And in the case of this property(s), the damage/destruction of the structure(s) exceeds 75%, rendering the restoration of the structure(s) impractical. This level of damage/destruction is an immediate hazard to the community.

The Report valued the building at $34,500 with repairs costing between $95,000 and $100,000. Moreover, the Report noted that no previous progress had been made in making repairs. Based upon this Report, the Metro Codes Department set a hearing for the condemnation of the building on January 26, 2012.

Upon learning that NEON was planning to make repairs to the Fire Hall, Wal-Mart sent NEON a cease and desist letter, dated December 5, 2011, in which it asserted ownership of the property based on the substantial damage caused by the fire, which caused reversion of title to Wal-Mart.

Representatives of both Wal-Mart and NEON appeared and participated at the January 26, 2012, condemnation hearing before the Metro Codes Department. At the conclusion of the hearing, the Metro Codes Department recognized Wal-Mart as the fee-simple owner of the property based on the reversion clause and issued an order requiring the demolition of the Fire Hall within 90 days. NEON filed an appeal to the Metro Property Standard and Appeals Board contesting Wal-Mart's ownership.

On March 22, 2012, Wal-Mart commenced this action in the Chancery Court for Davidson County.[2] Wal-Mart subsequently filed a motion for summary judgement that was properly supported by a statement of undisputed facts and affidavits. Wal-Mart contended it was entitled to judgment as a matter of law based on the undisputed fact that substantially

---

[1]It is believed the fire was caused by homeless persons who inhabited the Fire Hall.

[2]Two weeks later, on April 4, 2012, the appeal from the demolition order was heard; however, the Appeals Board deferred action pending a final judgment by the Chancery Court.

all of the Fire Hall was damaged, which constituted a casualty as that term is defined in the reversion provision and triggered the reversion.

NEON did not dispute the fact that all or substantially all of the Fire Hall was damaged by the fire; however, it opposed the motion contending the reversion clause is ambiguous. Specifically, NEON asserted that the deed identifies two definitions of the term "casualty," and that both must have occurred for the Fire Hall to revert. It also asserted that but for Wal-Mart's interference, NEON could have repaired the property within 180 days of the fire. As a consequence, NEON insisted the Fire Hall did not revert to Wal-Mart.

Prior to the hearing, the parties stipulated that there were no genuine issues of material fact and that the dispositive issue was the meaning of the defined term "casualty." Following the hearing, the trial court granted summary judgment in favor of Wal-Mart, finding the reversion clause in the deed to be clear and unambiguous in that it provided two separate and distinct grounds for reversion, and that one of the grounds for reversion had occurred.

In this appeal, NEON contends that the conditions contained in the Quitclaim Deed with respect to reversion are ambiguous, and, therefore, summary judgment was inappropriate. It also contends that Wal-Mart's efforts to prevent NEON from repairing the Fire Hall estops it from claiming title because the property was not repaired within 180 days.[3]

**ANALYSIS**

As the moving party, Wal-Mart is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008) (quoting Tenn. R. Civ. P. 56.04; *accord Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000)). It is undisputed that a fire occurred on December 1, 2011, which damaged all or substantially all of the Fire Hall; therefore, whether Wal-Mart is entitled to judgment as a matter of law is dependent on the meaning of the term "casualty" as defined in the Quitclaim Deed.

When courts are determining the meaning of terms of a contract, or deed, they are to ascertain the intent of the parties based on the ordinary and natural meaning of the words

---

[3]NEON also raised the issue of whether Wal-Mart prepared the deed; however, Wal-Mart does not dispute the fact that it prepared the deed. NEON also contends that in the event we find the term "casualty" in the reversion clause is ambiguous, then it becomes a question of fact. We have concluded the term is not ambiguous, which renders this issue moot.

used in the instrument. *Barnes & Robinson Co., Inc. v. OneSource Facility Servs., Inc.*, 195 S.W.3d 637, 642 (Tenn. Ct. App. 2006) (citing *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999)). In construing a contract or deed, the court will not apply a strained construction of the language to create an ambiguity where one does not exist. *Planters Gin. Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 891 (Tenn. 2002) (citing *Empress Health and Beauty Spa, Inc., v. Turner*, 503 S.W.2d 188, 190-91 (Tenn. 1973)). The interpretation of a deed is a question of law, which is reviewed *de novo* with no presumption of correctness. *Griffis v. Davidson Co. Metro. Gov't.*, 164 S.W.3d 267, 274 (Tenn. 2005).

A contract is ambiguous "only when it is of uncertain meaning and may fairly be understood in more ways than one." *Planters Gin. Co.*, 78 S.W.3d at 890 (quoting *Turner*, 503 S.W.2d at 190-91). However, terms are not ambiguous merely because the parties disagree as to the interpretation of a given clause. *Cookeville Gynecology & Obstetrics, P.C. v. Se. Data Sys., Inc.*, 884 S.W.2d 458, 462 (Tenn. Ct. App. 1994).

Wal-Mart asserts that "casualty," as defined in the deed, can result from *either* substantial damage *or* damage not repaired within 180 days; thus, only one need be established for the reversion to occur. Conversely, NEON asserts that the words "and" and "or" in the definition of casualty are interchangeable in the construction of contracts; therefore, reversion would not occur if the damage could be repaired within 180 days.

In support of this argument, NEON relies on *City of Knoxville v. Gervin*, 89 S.W.2d 348 (Tenn. 1936) and *Pryor Oldsmobile v. Tenn. Motor Vehicle Comm'n*, 803 S.W.2d 227 (Tenn. Ct. App. 1990). We find NEON's reliance on these cases misplaced.

Both cases allow "and" and "or" to be used interchangeably; however, it is only done when the context so provides. Specifically, the cases that *Gervin* relies upon hold that *the context* in which the terms "and" and "or" are used must favor the conversion to find them interchangeable. *State v. White*, 177 S.W. 478, 479 (Tenn. 1915) ("Ordinarily, the word 'and' expresses the relation of addition, but it is frequently construed as meaning "or," *provided the context favors the conversion*.") (emphasis added); *Bird v. State*, 175 S.W. 554, 556 (Tenn. 1915) (finding that the legislature "evidently used" "or" to mean "and" to better harmonize the meaning of the statute); *Smith v. Haire*, 181 S.W. 161, 163-64 (Tenn. 1915) (finding that husband interchangeably used the words "or" and "and" in certificates of deposit, showing that he attached no significance to the word "or"); *Ransom v. Rutherford Cnty.*, 130 S.W. 1057, 1062 (Tenn. 1910) ("We think it quite plain from a consideration of the act that it was the intention of the Legislature. . . ."). In addition, *Pryor* explicitly states that "the word 'or' is sometimes interpreted as conjunctive *in a given context. . .*" *Pryor*, 803 S.W.2d at 230 (emphasis added). Here, the context does not suggest that the parties meant "or" to be "and" in defining "casualty." In fact, the relevant language can only reasonably

be interpreted in one way; thus, the term is not ambiguous. To replace "or" with "and" would require that we ignore the ordinary and natural meaning of the terms. Furthermore, if we were to apply the interpretation as suggested by NEON, we would be applying a strained construction of the language to create an ambiguity where one does not exist, which we are not allowed to do. *See Planters Gin. Co.*, 78 S.W.3d at 891.

It is apparent, not only from the context, but also from the ordinary and natural meaning of the language that the word "casualty" is defined by two separate, independent clauses connected by the disjunctive article "or." These two separate, independent events that can cause a "casualty" are: 1) damage to all or substantially all of the building, or 2) damage that is not repaired within 180 days. Thus, applying the ordinary and natural meaning of these words, it is clear that the grantee (NEON) would have had the right to effect repairs *if* the damage to the Fire Hall had only been minor; however, that is not what occurred here. Because the December 2011 fire caused damage to all or substantially all of the building, NEON had no right to effect repairs.

In considering the language by the ordinary usage, it is clear that the parties intended to create two triggering events which would revert title to the grantor: the word "casualty" is defined by two separate clauses connected by the disjunctive article "or." Therefore, we find that the relevant language incorporated by the parties in the deed is not ambiguous.

Accordingly, we affirm the trial court's ruling that the term "casualty" was clear and unambiguous, that the damage resulting from the December 2011 fire, which was to all or substantially all of the Fire Hall, constituted a casualty which reverted the property back to Wal-Mart, and that Wal-Mart is entitled to summary judgment.

Because we have concluded that the deed unambiguously states that casualty shall mean a fire or other casualty that results in damage to all or substantially all of the Fire Hall, and that this form of casualty is in the alternative to and independent of whether the damage is repaired within 180 days after the occurrence, NEON's issue as it pertains to Wal-Mart issuing cease and desist orders and commencing this action is rendered moot.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against North Edgefield Organized Neighbors, Inc.

_____
FRANK G. CLEMENT, JR., JUDGE